IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

HENRY CROSBY, III,

    Plaintiff,

vs.                                                                                    CASE NO. 1:14-cv-141-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for supplemental income benefits pursuant to Title XVI of the Social Security Act. (ECF No. 1.) The Commissioner has answered (ECF No. 17), and both parties have filed briefs outlining their respective positions. (ECF Nos. 22 & 23.) For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income (SSI) under Title XVI on January 13, 2011. (R. 165-73.) He alleged disability beginning January 13, 2011. (*Id.*) Plaintiff's application was denied initially and upon reconsideration. (R. 84-85, 96-102, 104-08.) Plaintiff requested a hearing with an administrative law judge (ALJ), which was held on August 3, 2012. (R. 26-77.) The ALJ issued a decision unfavorable to Plaintiff on December 28, 2012. (R. 8-21.) The

Appeals Council denied Plaintiff's request for review on May 30, 2014. (R. 1-3.) On August 8, 2014, Plaintiff filed the instant appeal to this Court. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

*Case No. 1:14-cv-141-MP-GRJ*

exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD

#### A. Medical History

Plaintiff underwent an initial psychiatric evaluation on January 12, 2011 at Meridian Healthcare. He reported depressive symptoms, but denied suicidal and homicidal ideation. The examiner assigned Plaintiff a Global Assessment of Functioning Score ("GAF") of 50. Plaintiff reported that he was using marijuana on a daily basis to manage pain. (R. 293-96.)

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

On January 21, 2011, Plaintiff went to the emergency room at Shands Hospital complaining of diffuse pain, mainly over his chest.  He stated that he controlled the pain by smoking marijuana but stated that he did not want to do that anymore and was contemplating suicide.  The records revealed a meniscal injury of his knees bilaterally, but no ligamental tear.  Plaintiff was referred for orthopedic evaluation.  (R. 372-90.)

That day, Plaintiff was Baker Acted from Shands to Meridian Behavioral Healthcare due to his suicidal ideation.   Plainitff stated that he has intermittent suicidal ideation due to his chronic pain and depression, but did not have a current suicide plan.  He reported a depressed mood, decreased appetite, low energy levels, change in sleep, feelings of worthlessness, feelings of guilt, and difficulty concentrating.  The examiner assessed that Plaintiff's insight and judgment were fair and diagnosed Plaintiff with Depressive Disorder Not Otherwise Specified.  Plaintiff's GAF was 36.  Plaintiff was discharged from Meridian Behavioral Healthcare on February 1, 2011.  (R. 297-311.)

Plaintiff received treatment for depression and diffuse pain at University of Florida Physicians from February to April of 2011.  Plaintiff was diagnosed with chest pain of unclear etiology and was given ibuprofen.  Plaintiff was treated with Prozac for depression and instructed to avoid abrupt discontinuation of his medication as the break in medication was likely causing an increase of depressive symptoms.  The physician noted the possibility of rheumatoid arthritis and referred Plaintiff to Rheumatology.  (R. 320-32, 372-98.)

On June 30, 2011, Plaintiff presented at University of Florida Physicians,

complaining of "syncopal episodes" over the last few weeks. His symptoms were determined to be related to dehydration. He was told to follow up with Rheumatology for his joint pain to be assessed for rheumatoid arthritis. (R. 336-39.)

On July 19, 2011, Plaintiff was examined for polyarthralgia, or multiple joint pain. The physical exam showed no inflammation in Plaintiff's shoulder, elbow, wrist, hand, hips, knee, ankle, or foot joints, and he had a good range of motion in all joints. The physicians found no inflammatory arthritis and noted that it was more likely that Plaintiff had osteoarthritis and hyper mobility syndrome. The doctors ordered physical therapy. (R. 338-39.)

Plaintiff visited the emergency department of Shands in July 2011 after a fall on his hip, concerned that his hip was dislocated. The CT scan of Plaintiff's hip was negative for acute abnormalities, and his pain improved. Plaintiff was able to ambulate and bear his full weight. (R. 345-63.)

In October 2011 through January 2012, Plaintiff saw Dr. Raj Mehta for a follow up regarding his anxiety, depression, and multi-joint arthritis. Dr. Mehta opined that Plaintiff's depression and joint pain were improving. Plaintiff was prescribed Cymbalta for his depression and anxiety, and Lioresal for his arthralgia. (R. 404-10.)

Plaintiff returned to the emergency department at Shands following a syncopal episode. Plaintiff was diagnosed with anemia, and the physician noted that Plaintiff did not need a blood transfusion but recommended that he take a multivitamin with iron daily. (R. 478-502.)

### B.     Hearing Testimony

At the hearing, Plaintiff testified that he had previously worked as a driver and he had last worked in 2006.  Plaintiff said that he is unable to work due to pain caused by various conditions, including osteoarthritis, fibromyalgia, and severe depression.

Plaintiff stated that he was previously Baker Acted.  He reported taking medication for fibromyalgia, which made him sleepy and disoriented, and medication for anxiety and lack of sleep, which he characterized as "harsh."  Plaintiff said that one of his medications causes him to pass out.  He claimed that he smoked marijuana to manage his pain, but stopped about a month prior to the hearing because he was studying to be a Jehovah's witness.

Plaintiff testified that he is always in pain—whether he is sitting, lifting, standing, or walking—and that he has had this pain for twenty years. Plaintiff tries to sleep during the day.  According to Plaintiff, on a typical day he cares for and walks his dogs, sits outside, rides his bicycle to the store or doctors, studies religion, and sleeps in a tent in the backyard.  He visits with a friend to eat, sleep, and shower.  Plaintiff does not grocery shop but usually buys a sandwich and drink from a convenience store.  He stated that he does not do any chores.  Plaintiff also said that his cousin helps him with his personal hygiene.

Plaintiff claimed that he sleeps only two or three hours a day and is constantly tired and unable to function.  Plaintiff reported that he sometimes goes three or four days without eating.  Plaintiff also said that he has difficulty concentrating when trying to study religion.  (R. 26-77.)

### C.     Findings of the ALJ

The ALJ found that Plaintiff had the severe impairments of generalized anxiety disorder and depression, and declined to find that any of his physical impairments (i.e. back problems, gastroesophageal reflux, abdominal pain, meniscus injury, anemia, syncope, and arthralgias) were severe.  The ALJ further found that Plaintiff's impairments and combination of impairments did not meet a listing.  As a result, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: limited to simple, routine, repetitive tasks in an environment without fast paced production requirements, involving only simple work related decisions and routine workplace changes.  The ALJ also limited Plaintiff to occasional interaction with the public.  (R. 11-20.) The ALJ then found that Plaintiff could not perform his past relevant work, but in reliance upon the testimony of a vocational expert, the ALJ concluded that there were jobs that Plaintiff could perform which existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.

### IV.  DISCUSSION

Plaintiff's argument—contained in two of twenty pages of his brief—offers little if any support for his argument. In the heading of Plaintiff's argument, Plaintiff first says the ALJ erred with regard to the severity findings concerning Plaintiff's  "non-mental health impairments." Plaintiff then says that this error caused the ALJ to fail to consider all of Plaintiff's impairments in combination.  The problem with Plaintiff's argument is

that after stating the issue, Plaintiff says nothing in his brief to explain why the medical evidence does not support the ALJ's analysis of Plaintiff's physical impairments. And then without any discussion of how Plaintiff's non-severe impairments caused any additional limitations, when combined with the severe impairments of generalized anxiety disorder and depression, Plaintiff conclusionally argues that the ALJ erred by failing to consider all of Plaintiff's impairments in combination.

Contrary to Plaintiff's suggestion, the medical evidence of record clearly supports the ALJ's finding that Plaintiff's physical impairments were not severe. And, we know that the ALJ nonetheless considered these impairments in combination with Plaintiff's severe impairments because the ALJ expressly said she had done so.

With regard to pain, the ALJ must consider a claimant's testimony of pain and other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard." *Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995). Under that test, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms. *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes he has an impairment that could reasonably be expected to produce his alleged

symptoms, the ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Under the Eleventh Circuit's "pain standard," the ALJ need only consider Plaintiff's subjective complaints of pain if Plaintiff can show an underlying medical condition, accompanied by objective medical evidence that confirms or supports the severity of the pain or symptoms. In this case, Plaintiff's problem is that he failed to show that the medical evidence supports his claims of pain or that his medical conditions were so severe that they could reasonably be expected to produce the alleged pain or symptoms.

The ALJ thoroughly addressed the medical evidence relating to Plaintiff's physical impairments at step two. The ALJ determined that none of Plaintiff's alleged physical impairments—including back problems, gastroesophageal reflux, abdominal pain, meniscus injury, anemia and syncope, and arthalgias—were severe.

In reaching this conclusion the ALJ referenced Plaintiff's conservative treatment for arthralgias, which controlled Plaintiff's pain, and management of his back pain with nonsteroidal inflammatory agents. The ALJ further relied upon the fact that there was no evidence in the medical records supporting inflammatory arthritis, no evidence of synovitis in the joints of the shoulders, elbows, wrists, hands, hips, knees, ankles or feet and that the medical records disclosed Plaintiff maintained a good range of motion in all joints.

With regard to Plaintiff's meniscus injury, the ALJ concluded that it was not

severe because there was no evidence of a ligament tear, the record did not reflect that the injury lasted for twelve months, and most notably, Plaintiff never sought follow-up treatment for the injury.

With respect to Plaintiff's syncope and anemia, the ALJ pointed out that the symptoms were related to dehydration and that Plaintiff's anemia was treated with an over the counter multivitamin.

Finally, with regard to Plaintiff's treatment for gastroesophageal reflux and abdominal pain the problems were treated with medication, which produced relief, thus evidencing that these symptoms were non-severe.  The ALJ also relied upon the opinions of the State Agency medical consultants in finding that Plaintiff's physical impairments were non-severe.

In sum, the ALJ found that Plaintiff's physical impairments were non-severe because the medical record showed "rather benign objective findings and [] good control of symptoms with medications."  (R. 14.)  Severity is defined not by a diagnosis or the condition itself, but rather by the effect on the individual's ability to work.  *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1988)(The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.") The burden is on the claimant to show that a demonstrated impairment is a severe impairment.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   Plaintiff failed to show that any of his physical impairments would affect his ability to work over a twelve month period.   Accordingly, the ALJ did not err by finding that Plaintiffs physical

impairments were non-severe and by discounting Plaintiff's subjective complaints of pain.

Without suggesting how the ALJ failed to consider Plaintiff's impairments in combination, Plaintiff argues that the ALJ did not consider the combined effect of all impairments when evaluating disability because the ALJ improperly rejected Plaintiff's physical impairments as not severe.  While the ALJ concluded that Plaintiff's physical impairments were non-severe, the ALJ considered Plaintiff's physical impairments in combination with Plaintiff's other impairments when evaluating Plaintiff's RFC.  As evidence of that the ALJ expressly stated in her opinion that "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." Further, the ALJ expressly found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, a finding which is sufficient to demonstrate that the ALJ considered Plaintiff's impairments in combination.   *Wilson*, 284 F.3d at 1224-25; *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

For these reasons, the Court finds no error in the ALJ's step two finding.  Plaintiff failed to show that his subjective complaints of pain were supported by the objective medical evidence.  Moreover, Plaintiff failed to demonstrate that any of his physical exertional impairments affected his ability to work. The ALJ therefore correctly found that Plaintiff's physical impairments were not severe and appropriately discounted Plaintiff's claims of disabling pain.  And, in any event, the ALJ expressly stated that she

considered the effect of all of Plaintiff's impairments in combination, when she evaluated Plaintiff's RFC.  Thus, because Plaintiff failed to demonstrate that his impairments, singly or in combination, caused any additional limitations on his ability to work and because substantial evidence supports the ALJ's findings the decision of the Commissioner is due to be affirmed.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 5th day of October 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.